IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02484-RM-MEH

ERWIN INDICH,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, INC.,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Michael E. Hegarty, United States Magistrate Judge.**

On October 18, 2017, the Court heard argument on Defendant's Motion to Exclude the Testimony of Plaintiff's Expert, Evan Hendricks [filed July 14, 2017; ECF No. 127], which was referred to the Court by the Honorable Raymond P. Moore for a report and recommendation. At the hearing, the Court imparted its recommendation that the motion be granted in part and denied in part, but reserved portions of its findings pending receipt of a "status report" filed by the Defendant on October 20, 2017. The Court is now fully advised and makes the following findings and recommendations.

**I.    Background**

Defendant Equifax Information Services, Inc. is a consumer reporting agency that sells consumer reports, including background checks, to various third parties for a profit. Plaintiff Erwin Indich alleges the Defendant improperly "mixed" his credit file and/or consumer reports with another consumer, Edwin William Tinoco, then sold consumer reports about the Plaintiff which falsely stated that he was Mr. Tinoco and included accounts that did not belong to him. Plaintiff

claims that Defendant, by its conduct, negligently and willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

At the close of discovery, Defendant filed the present motion seeking an order precluding Plaintiff's purported expert, Evan Hendricks ("Hendricks"), from proffering expert testimony at trial. Defendant contends that Hendricks is not qualified to opine as to many portions in his original report, particularly as to Plaintiff's damages, and that Hendricks' opinions are not reliable under prevailing law. Plaintiff counters that Hendricks has been repeatedly approved to testify at trial concerning the history and mechanics of the credit reporting industry, and that Hendricks' knowledge of identity theft and its impact on credit reporting procedures would be important for a jury to hear. Further, Plaintiff asserts that Hendricks should be permitted to testify regarding judgments against Equifax in prior cases, and his background and experience are sufficient to support his opinion that Plaintiff's economic and non-economic damages are similar to those suffered by other plaintiffs.

## II. Legal Standards

Pursuant to Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I,*

2

*L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.;* Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods ... to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon,* 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert,* 509 U.S. at 592-93).

The Supreme Court has also concluded that the court's gatekeeping functions espoused in *Daubert* must be applied to all experts, not just those purporting to offer "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) ("the Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope."). The important inquiry is whether the expert offers relevant, reliable testimony from the expert's knowledge and experience. *See id.* The standard for that determination is whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. This standard applies whether the expert is basing his or her testimony on professional studies or personal experience. *Id.* "[T]he trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

While Plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, his proffer is tested against the standard of reliability, not correctness; Plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe,* 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

**III. Analysis**

Following a thorough examination of Hendricks by the parties (and the Court) at the hearing, this Court determined that he is qualified[1] to render opinions concerning the history[2] and background of the credit reporting industry and the typical policies and procedures of credit reporting agencies. With his qualifications, Hendricks is also qualified to opine as to the common marketplace problems a consumer may encounter when his/her file is "mixed."[3]

However, the Court also determined that Hendricks is not qualified to testify as to Plaintiff's claimed damages nor to any element of damages not claimed. Furthermore, based on Defendant's

---

[1]The expert report, despite referencing an "attached CV," does not actually include Hendricks' curriculum vitae; however, Hendricks provided a copy on his laptop computer for the Court's review at the hearing, and the Court is satisfied with its conclusions in this regard.

[2]The Court recommends overruling Defendant's relevance objection to Hendricks' testimony concerning Federal Trade Commission complaints and consent decrees from the early-to-mid 1990's; such testimony simply provides background to the FCRA and to the operations and (possibly) policies of credit reporting agencies.

[3]Hendricks defines a "mixed" file as "a Consumer Report in which some or all of the information pertains to a person or persons other than the person who is the subject of the Consumer Report." Original Report, ECF No. 164-1 at 2.

admission that it "has knowledge that providing consumer reports containing inaccurate information about a consumer may increase the likelihood that the consumer will experience difficulty in obtaining credit" (ECF No. 165), Hendricks may not testify about previous judgments and/or jury verdicts against Defendant.

As to whether Hendricks' opinions are reliable, Defendant focuses on the original report Hendricks submitted concerning the three Defendants originally named in this case: Equifax, Experian, and Trans Union. *See* ECF No. 164-1. In it, Hendricks sets forth his "methodology" as follows:

> As a specialized knowledge expert, a fundamental method that I employ and follow is to apply my experience with and specialized knowledge of such relevant matters as (1) the credit reporting and credit scoring systems and industries and standards associated with them, (2) standards of "Fair Information Practices" ("FIPs"), and (3) the Fair Credit Reporting Act and operations thereunder, to the facts at hand.

*Id.* For purposes of this motion, though, Defendant does not challenge what is contained within Hendricks' original report so much as what is *not* contained in the report. That is, Defendant argues it is barely mentioned by Hendricks in his report. The Court agrees; Equifax is mentioned only in general terms in the report while at least one other Defendant, Experian, is referenced often and with more specificity as to its purported improper conduct. *See id.*

After Hendricks was deposed on May 19, 2017 and, apparently, after he "finally" received "the frozen scans for the 'perp file' of Edwin Tinoco," Hendricks issued a Supplemental Report on May 24, 2017 opining that "in response to Plaintiff's application, Equifax sold to Discover a credit report with Tinoco's wrongly mixed information." ECF No. 164-2. Defendant argues the Supplemental Report "contains factual errors, incorrect assumptions, and other flaws that render it

admission that it "has knowledge that providing consumer reports containing inaccurate information about a consumer may increase the likelihood that the consumer will experience difficulty in obtaining credit" (ECF No. 165), Hendricks may not testify about previous judgments and/or jury verdicts against Defendant.

As to whether Hendricks' opinions are reliable, Defendant focuses on the original report Hendricks submitted concerning the three Defendants originally named in this case: Equifax, Experian, and Trans Union. *See* ECF No. 164-1. In it, Hendricks sets forth his "methodology" as follows:

> As a specialized knowledge expert, a fundamental method that I employ and follow is to apply my experience with and specialized knowledge of such relevant matters as (1) the credit reporting and credit scoring systems and industries and standards associated with them, (2) standards of "Fair Information Practices" ("FIPs"), and (3) the Fair Credit Reporting Act and operations thereunder, to the facts at hand.

*Id.* For purposes of this motion, though, Defendant does not challenge what is contained within Hendricks' original report so much as what is *not* contained in the report. That is, Defendant argues it is barely mentioned by Hendricks in his report. The Court agrees; Equifax is mentioned only in general terms in the report while at least one other Defendant, Experian, is referenced often and with more specificity as to its purported improper conduct. *See id.*

After Hendricks was deposed on May 19, 2017 and, apparently, after he "finally" received "the frozen scans for the 'perp file' of Edwin Tinoco," Hendricks issued a Supplemental Report on May 24, 2017 opining that "in response to Plaintiff's application, Equifax sold to Discover a credit report with Tinoco's wrongly mixed information." ECF No. 164-2. Defendant argues the Supplemental Report "contains factual errors, incorrect assumptions, and other flaws that render it

inadmissible."[4]  Mot. 2.  The Court disagrees as to admissibility of the Supplemental Report and concludes that the report and Defendant's arguments raise factual issues that must be resolved by the factfinder.  *See Crabbe*, 556 F. Supp. 2d at 1221 (an expert's proffer is tested against the standard of reliability, not correctness).

In addition, the Court finds the original Report and the Supplemental Report together reflect certain relevant historical information and opinions reached with sufficient facts and data applied by a reliable methodology.  Accordingly, the Court recommends that Judge Moore grant in part and deny in part Defendant's motion and permit Hendricks to testify only as follows:

1. Hendricks may testify concerning the history and background of the credit reporting industry and the typical policies and procedures of credit reporting agencies;

2. Hendricks may testify regarding his knowledge of identity theft and its impact on the credit industry;

3. Hendricks may testify as to any common "marketplace"[5] problems a consumer may encounter when his or her file is "mixed";

4. Hendricks may testify regarding the Discover credit report referenced in his Supplemental Report; but,

5. Hendricks may not opine concerning the Plaintiff's claimed damages nor to any element of damages not claimed; and

---

[4] At the hearing, the Court offered Defendant an opportunity to depose Hendricks a second time in light of "new" information Hendricks included in the Supplement Report; Defendant declined.  Status Report, ECF No. 165.

[5] In this respect, the Court refers to problems or experiences that are neither mentally nor emotionally related to encountering a mixed file (*i.e.*, denial of credit or other opportunities because of inaccurate credit data).

6. Based on Defendant's admission that it "has knowledge that providing consumer reports containing inaccurate information about a consumer may increase the likelihood that the consumer will experience difficulty in obtaining credit," Hendricks may not testify or opine as to previous judgments and/or jury verdicts against Defendant.

IV. Conclusion

THEREFORE, based on the foregoing and the entire record, this Court respectfully recommends that Judge Moore **grant in part and deny in part** the Defendant's Motion to Exclude the Testimony of Plaintiff's Expert, Evan Hendricks [filed July 14, 2017; ECF No. 127] as set forth herein.[6]

Dated and entered this 30th day of October, 2017, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

7